UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD GRIFFES,

                Petitioner,

                                               Case No. 11-cv-14227

v.

                                               HON. MARK A. GOLDSMITH

STEVEN RIVARD,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Edward Griffes has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(b); felony firearm, Mich. Comp. Laws § 750.227b; and receiving and concealing stolen property (firearms), Mich. Comp. Laws § 750.535(2)(b).   For the reasons stated below, the Court denies the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

## I.   BACKGROUND

Petitioner was convicted of the above charges following a jury trial in the Montcalm County Circuit Court, in which he was tried jointly with his co-defendants Heath McGowan and Clint McGowan.   This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).   See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> This appeal concerns the murder of 88-year old Henry Marrott
> within his home.   Marrott was widely referred to as "Walking

Sam" in the local area and in the town of Trufant, Michigan where he resided.   Marrott's body was discovered by his lawn care service, having noticed an odor emanating from the home and a massive amount of flies at a window.   Upon entering the home, a member of the lawn crew observed the victim's legs hanging out of a bed.   On investigation, police observed the basement door area to be ajar and that the locking mechanism to the basement "appeared to have been broken or jimmied somehow."

\*       \*       \*

[I]t was not until a one-man grand jury was convened in the fall of 2005 that information was obtained and "this case burst wide open."   Following a five-day hearing, in early 2006 the grand jury authorized indictments for Heath McGowan, Clint McGowan, Eddie Griffes, Michael Hansen and Melissa Mudgett[1] on 14 separate counts, including open murder and felony murder.   In addition, indictments were also authorized for Tara Waldorf and Brian Hansen for one count each of accessory after the fact.

Ultimately, co-defendant Michael Hansen pleaded guilty to second-degree murder, receiving a sentence of 22½ to 50 years imprisonment.   In return, Hansen testified regarding the events leading up to and occurring after the murder.   According to Hansen, while at the home of Tiffany Taylor, he and Heath were informed that Marrott had both Oxycontin and money in his home.   Later, when at Jody Smith's apartment, Smith and the co-defendants discussed going to the victim's house when he would not be there to steal the money and drugs.   Heath and Clint McGowan, along with Griffes, Hansen and two women, Tara Waldorf and Melissa Mudgett drove to the victim's home in the evening.   Waldorf and Mudgett remained in the vehicle.   The McGowans, Hansen and Griffes entered the victim's home. Hansen remained at the front door as a lookout.   Contrary to their expectations, Marrott was at home and argued with Heath. Hansen indicated that Heath struck Marrott in the head "with his hand or something."   While in the home, the McGowans and Griffes searched for drugs and money and left with an "old black powder pistol," an unknown quantity of Oxycontin pills and a "lock box" containing money.   The four men and two women then drove to a state recreational facility for the visually disabled located near the home of McGowans' parents, later referred to as

---

[1]   The correct spelling of the last name of this witness is Mudget.   See 9/27/2006 Trial Tr. at 166 (Dkt. 17-14)

"the blind camp."   At that location, the pills and money were divided.

People v. McGowan, Nos. 274829, 275197, 276385, 2009 WL 4827442, at *1 (Mich. Ct. App. Dec. 15, 2009) (per curiam).   Petitioner's conviction was affirmed on appeal.   Id., leave denied 783 N.W.2d 342 (Mich. 2010).

Petitioner filed a post-conviction motion for relief from judgment pursuant to Mich. Ct. R. 6.500 et. seq., which was denied.   People v. Griffes, No. 06-M-7355-FH, Order (Montcalm County Circuit Court Nov. 2, 2012) (Dkt. 17-29).   The Michigan appellate courts then denied Petitioner leave to appeal.   People v. Griffes, No. 316007 (Mich. Ct. App. Dec. 27, 2013) (Dkt. 17-32), leave denied 849 N.W.2d 382 (Mich. 2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

i.   "It was an abuse of discretion for the court to deny change of venue, or to sever, and failure to order a separate jury for Defendant Griffes where the court was aware that Griffes' defenses were inconsistent and a separate jury could focus on such evidence related solely to Griffes['] culpability in the allegation of his presence at the crime scene, thereby reducing the likelihood of a conviction by association with defendant Heath McGowan."

ii.   "It was an abuse of discretion for the court to deny indigent Defendant Griffes expert witness fees related to the scientific effects of methamphetamine where the prosecution intended to call methamphetamine addicts groomed by the police to change their testimony that Griffes was not present at the crime scene and to buttress this with police 'expert meth addict memory testimony' at trial."

iii.   "It was error for prosecution to present and the court to allow a police officer to testify as an expert witness in the psychology of memory of drug addicts, where the police officer was not qualified as an expert and there is no recognized science in the recovery of memory."

iv.   "There was insufficient evidence at trial to prove beyond a reasonable doubt that Defendant Griffes was present at the break in and murder of Henry Marrott on July 19, 2002, where there was no

3

physical evidence of his presence, his identification was by drug addicts who benefitted by implicating him with changed stories influenced by police tactics and where he was physically incapable of participating, Griffes having suffered a fracture of his left hip socket and third degree burns on his foot, hospitalized from June 23, 2002 until July 26, 2002, and being confined to a wheelchair until July 26, 2002, when he was allowed to use crutches alleging to have been a passenger in a cramped small car containing five other individuals, exiting the vehicle and running from the victim's home, without the benefit of a wheelchair or crutches, on the night of July 19, 2002."

v.  "The trial court committed reversible error during the jury selection process, especially when it permitted the prosecution to exercise seven consecutive peremptory challenges and also because it denied each defendant the 20 statutory challenges to which they were entitled."

vi.  "The prosecutor prejudiced defendant with improper arguments in violation of his United States Constitution Amendments V, VI, XIV[.]"

vii.  "Unduly suggestive witness identification violated defendant's due process[.]"

viii.  "Defendant was denied effective assistance of trial counsel violating his VI Amendment[.]"

ix.  "Defendant was prejudiced by ineffective assistance of appellate counsel violating his VI Amendment[.]"

x.  "Defendant was denied his right to counsel violating his VI Amendment when Judge Miel denied G.R. Frie's motion to appear as co-counsel[.]"

Pet'r Mem. at 11-12 (cm/ecf pages) (Dkt. 13); see also Pet. at 14-18 (cm/ecf pages) (Dkt. 1).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's

5

contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

Moreover, habeas review is "limited to the record that was before the state court." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).

## III.   ANALYSIS

### A.  Claim One: The Pretrial-Publicity/Separate-Jury Claim

Petitioner alleges that the trial judge should have granted his motion to change venue because of extensive pretrial publicity.   The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant Griffes filed a pre-trial motion seeking a change of venue, asserting that ongoing publicity in the local media in this small community precluded a fair trial due to "community sentiment and widespread exposure."   Griffes contended an impartial jury could not be found to hear this case.   The trial court denied the motion based on defendant's failure to show actual prejudice or such deep-seated animosity within the community to preclude the selection of a fair and impartial jury, but agreed to revisit the issue if a jury could not be selected.   Following the seating of a jury, defendant renewed his motion for a change of venue.   The trial court denied the motion, based on the majority of jurors stating they were not familiar with the case and the averments of the remaining jurors, who acknowledged seeing some media coverage of the case, indicating their ability to remain impartial and render a decision based on the evidence to be presented at trial.

<u>McGowan</u>, 2009 WL 4827442, at *17.

Prejudice to a defendant can be presumed in cases where the influence of the news media, either in the community at large, or in the courtroom itself, "pervaded the proceedings." <u>Murphy v. Florida</u>, 421 U.S. 794, 798-799 (1975).   However, pretrial publicity, even pervasive adverse publicity, does not inevitably lead to an unfair trial.   See <u>DeLisle v. Rivers</u>, 161 F.3d 370, 382 (6th Cir. 1998).   The "indicia of impartiality" on the part of a jury is disregarded only in those cases "where the general atmosphere in the community or the courtroom is sufficiently inflammatory."   <u>Id.</u> at 382 (quoting <u>Murphy</u>, 421 U.S. at 802).   The mere prior knowledge of

the existence of a case, or familiarity with the issues involved, or even some pre-existing opinion as to the merits of the case, does not, in and of itself, raise a presumption of a jury taint.   Id.   A person is not automatically rendered unqualified to serve as a juror merely because he or she has been exposed to media coverage of the charged offense.   Instead, the issue becomes whether the exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law as stated to the evidence presented.   Dell v. Straub, 194 F. Supp. 2d 629, 654 (E.D. Mich. 2002).

In the present case, Petitioner has presented no evidence that showed the type of extensive or inflammatory pretrial publicity that has been condemned by the Supreme Court. The Supreme Court has emphasized the negative effect of pretrial publicity when the publicity amounts to an "out-of-court campaign to convict," reflecting "inflamed public sentiment." DeLisle, 161 F.3d at 385 (quoting Shepherd v. Florida, 341 U.S. 50, 52-53 (1951)).   Coverage that consists of "straight news stories rather than invidious articles which tend to arouse ill will and vindictiveness" are not so troubling.   Id. at 385 (quoting Beck v. Washington, 369 U.S. 541, 556 (1962)).

Petitioner has failed to show that any of the media coverage was unduly inflammatory or designed to arouse "ill will" or community prejudice.   The media exposure was not so inflammatory so as to render Petitioner's trial unfair, particularly where the vast majority of the stories appear to have simply provided facts about Petitioner's case.   See Deel v. Jago, 967 F.2d 1079, 1087-1088 (6th Cir. 1992).

In addition, there is nothing from the record or the habeas petition to indicate that the courthouse in Petitioner's trial was "conducted in a circus atmosphere, due in large part to the intrusion of the press."   Murphy, 421 U.S. at 799 (quoting Estes v. Texas, 381 U.S. 532(1965)).

8

Petitioner has presented no evidence to demonstrate that the general atmosphere in the community or courtroom was "sufficiently inflammatory" for either the Michigan courts or this Court to disregard the jury's "indicia of impartiality." Id. at 802. Petitioner has not presented any evidence that his trial took place under the conditions of "total chaos" that prevailed in cases like Estes or Sheppard v. Maxwell, 384 U.S. 333 (1966). A review of those cases leaves no doubt that it was "that chaos which drove those decisions." DeLisle, 161 F.3d at 384. Because the record does not indicate that Petitioner's trial took part in a "circus like atmosphere," this Court cannot presume prejudice to Petitioner's case merely because the jurors were exposed to pretrial publicity about the case. Dell, 194 F. Supp. 2d at 655.

Petitioner has also failed to show actual prejudice to his case from the jurors' exposure to the pretrial publicity. To demonstrate actual prejudice, a habeas petitioner must show that one or more jurors entertained an opinion before trial that petitioner was guilty and that these jurors could not put this prejudice aside and render a verdict based solely upon the evidence. Id. The test for whether pretrial publicity necessitates a change in venue is whether a juror exposed to pretrial publicity can lay aside his or her impression or opinion and render a verdict based upon the evidence presented in court. Id.

The trial court judge removed Dean Voss, Juror Number 547, during voir dire when Voss said that he had a problem with individuals that were given immunity for their testimony and that he would view the individual as "somebody [who] bartered their freedom for that testimony." 9/12/2006 Trial Tr. at 67 (Dkt. 17-9). The trial court judge also excused Joni Brooks, Juror Number 66, during voir dire when she informed the court that she had formed an opinion and would not be able to set the opinion aside to render a true verdict based only on the evidence presented in the courtroom during trial. Id. at 68.

9

Following the jury selection, the trial court judge revisited the motion for a change of venue and ruled as follows:

> I don't think in the overall, there's a basis here for a change of venue because we do have 14 jurors here who either indicated they had no information about the publicity involved, if they had some, they had no opinion about it and maybe at best, two said they had an opinion and could set it aside.

Id. at 129.

Every prospective juror who had formed an opinion about Petitioner from exposure to the pretrial publicity and could not render a fair verdict was removed from the jury by the judge.   In light of the fact that every potential juror who had formed an opinion regarding Petitioner's guilt was removed from the jury, Petitioner is unable to show that he was prejudiced by the pretrial publicity.   See White v. Mitchell, 431 F.3d 517, 532 (6th Cir. 2005).

The mere fact that jurors were excused because they indicated that they could not be fair and impartial is insufficient to establish that the jurors who were ultimately seated were partial or biased.   See Murphy, 421 U.S. at 803 (fact that 20 of 78 prospective jurors were excused because they indicated an opinion as to the defendant's guilt did not conclusively suggest a community with a sentiment so poisoned against defendant as to impeach the indifference of jurors who displayed no animus of their own).

There is nothing from the record to show that any pretrial publicity tainted the jury pool where two jurors, at most, indicated that they had formed an opinion but could set that opinion aside.   A prospective juror's exposure to pretrial publicity does not merit his or her disqualification, where the juror states unequivocally that he would decide the case on the facts brought out at trial.   McQueen v. Scroggy, 99 F.3d 1302, 1319 (6th Cir. 1996).   Petitioner has failed to establish actual prejudice on the part of these jurors in light of the fact that all of the

10

jurors seated indicated that they would base their judgment solely upon the evidence introduced in the trial court.  Dell, 194 F. Supp. 2d at 656.   Because he has failed to provide clear and convincing evidence that the jurors empaneled could not be impartial, Bell v. Hurley, 97 F. App'x. 11, 19 (6th Cir. 2004), Petitioner is not entitled to habeas relief on his change of venue claim.

Petitioner next alleges that he should never been tried by the same jury as co-defendant Heath McGowan, because Heath McGowan had made numerous culpable statements to other jail inmates who were expected to testify at trial.   Petitioner contends that he could not receive a fair trial due to the great danger that a jury considering the charges against Heath and Clint McGowan could convict Petitioner because of his association with the co-defendants. Pet'r Mem. at 27-28.

A criminal defendant is not entitled to a separate trial merely because he or she might have had a better chance for acquittal in a separate trial, Zafiro v. United States, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses, Stanford v. Parker, 266 F.3d 442, 458 (6th Cir. 2001).   The Supreme Court, in fact, has indicated that "mutually antagonistic defenses are not prejudicial per se."   Zafiro, 506 U.S. at 538.   A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539.   A habeas petitioner who seeks habeas relief on the basis of a state trial court's failure to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. Stanford, 266 F.3d at 459.   Joinder of defendants for trial is the preferred course, which creates a presumption in favor of joinder which must be overcome by the party seeking severance.   See

Foster v. Withrow, 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Petitioner is not entitled to habeas relief on his claim because he has failed to show that he and his co-defendants had mutually antagonistic defenses.   Each of the co-defendants denied responsibility for the crime, which was not antagonistic to Petitioner's defense that he did not commit the crime.   The record reflects that counsel for co-defendant Heath McGowan informed the jury during opening statement that "our defense is that our clients did not do it.   Our clients were not there on July 19th or 20th.   They were never at Henry Marrott's house and I think the evidence will support that."   9/12/2006 Trial Tr. at 160.

Petitioner also concedes that he was never implicated in the murder by Heath McGowan, and that McGowan denied knowing him at the time of the murder.   Pet'r Mem. at 27.   The jury could have believed Petitioner's theory based on the evidence presented.   See United States v. Carter, 760 F.2d 1568, 1574 (11th Cir. 1985) (alibi defense and mere presence defense to drug conspiracy charges not irreconcilable).   Further, there has been no showing that McGowan's defense was "predicated solely on" Petitioner's guilt.   All three defendants raised the same defense — "a denial of any involvement or participation in the crime."   McGowan, 2009 WL 4827442, at *19.   Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant."   United States v. Harris, 9 F.3d 493, 501 (6th Cir. 1993).   Because Petitioner has failed to show that Heath McGowan's defense was irreconcilably antagonistic to his own, Petitioner is not entitled to relief on his separate jury claim.

## B.  Claim Two: The Expert-Witness Claim

Petitioner next claims that the state trial court erred by denying him expert witness fees to procure an expert witness to testify on the effects of methamphetamine use on the

12

methamphetamine user.   Petitioner's attorney made the request at the motion hearing held on

April 13, 2006, arguing that an expert on the effect of methamphetamine on the user would

discredit the prosecution's witness and show their testimony to be unreliable.   The trial court

denied Petitioner's request for expert witness fees, finding that the reasons "defendants want

them here is for is to have Dr. Kuslikis to testify about the credibility of witnesses and that's not

understanding the evidence to determine the facts at issue."   See McGowan, 2009 WL 4827442,

at *3.

> The Michigan Court of Appeals found:

> > Contrary to defendants' assertions, the trial court properly declined
> > to award expert witness fees.   Defendants' proposed expert was to
> > be used to call into question the testimony of witnesses who were
> > admitted methamphetamine addicts based on problems evidenced
> > with memory and cognitive functioning.   Given that every
> > witness identified as a methamphetamine user openly
> > acknowledged that they experienced problems with their memory
> > and recall of events, an expert was unnecessary.   Each witness, on
> > direct examination by the prosecutor, repeatedly acknowledged
> > their inability to clearly recall events or place events into a time
> > perspective and complained of difficulties with their memories.
> > The lack of reliability regarding their recall was further explored
> > and emphasized on cross-examination.   Even testimony by the
> > lead investigating officer, Wolter, acknowledged that
> > methamphetamine addicts demonstrated poor memories and
> > difficulty with the recall and temporal sequencing of events.   At
> > best, an expert's testimony would have been merely duplicative
> > and the absence of an appointed expert did not serve to deprive
> > defendants of an opportunity to put forth their defense.

Id. at *4.

The main question for this Court is whether clearly established federal law mandates the

appointment of such an expert witness.   The phrase "clearly established federal law," for

purposes of § 2254(d)(1), is the governing legal principle or principles set forth by the Supreme

Court at the time that the state court renders its decision.   Lockyer v. Andrade, 538 U.S. 63,

71-72 (2003).   A habeas court may, therefore, look only at the holdings of the Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. Mitzel v. Tate, 267 F.3d 524, 530-31 (6th Cir. 2001).   The "clearly established law" requirement contained in § 2254(d)(1) is a codification of the Supreme Court's anti-retroactivity rule enunciated in Teague v. Lane, 489 U.S. 288 (1989), which required federal habeas courts to deny habeas relief that was contingent upon a rule of federal law that had not been announced until after the state court conviction became final.   See Williams v. Taylor, 529 U.S. at 379-80.

The Supreme Court precedent that would most closely address Petitioner's claim is Ake v. Oklahoma, 470 U.S. 68, 83 (1985), where the Supreme Court held that, when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

The Supreme Court, however, has never extended the rule in Ake to apply to the appointment of experts on issues other than a defendant's sanity.   In Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985), the Supreme Court indicated that, given that the petitioner had offered little more than undeveloped assertions that the assistance of a criminal investigator, a fingerprint expert, and a ballistics expert would be beneficial, there was no due process deprivation by the state court judge's denial of these requests.   Because the petitioner failed to make such a showing, the Supreme Court indicated that there was "no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought."   Id.

14

A number of courts have held that a habeas petitioner was not entitled to habeas relief based on a state trial court's failure to appoint a non-psychiatric expert witness, because the Supreme Court has yet to extend <u>Ake</u> to such non-psychiatric expert witnesses.   <u>See</u> <u>Weeks v. Angelone</u>, 176 F.3d 249, 264-265 (4th Cir. 1999) (habeas petitioner's entitlement to expert assistance at trial in the fields of pathology and ballistics would require the announcement of a new rule, in violation of <u>Teague</u>'s anti-retroactivity principle, because at the time that petitioner's conviction became final, Supreme Court precedent required only that an indigent defendant be appointed psychiatric experts when his sanity was at issue); <u>Jackson v. Ylst</u>, 921 F.2d 882, 886 (9th Cir. 1990) (habeas petitioner's claim that his due process rights violated when he denied the appointment of an expert on eyewitness identification proposed a new rule in violation of <u>Teague</u>, and therefore could not serve as a basis for federal habeas relief); <u>McKenzie v. Jones</u>, No. 00-CV-74577-DT, 2003 WL 345835, *3 (E.D. Mich. Jan. 29, 2003) (in light of the fact that the Supreme Court had not yet extended its holding in <u>Ake</u> to require the appointment of non-psychiatric experts to indigent criminal defendants, habeas petitioner was not entitled to a certificate of appealability, because he was unable to show that the state court's refusal to appoint an independent pathologist was contrary to, or an unreasonable application of, clearly established federal law); <u>Walters v. Maschner</u>, 151 F. Supp. 2d 1068, 1076 (N.D. Iowa 2001) (petitioner had no clearly established right to the appointment of an expert to aid in jury selection, thus, the denial of such an expert did not warrant federal habeas relief).

Because Petitioner did not have a clearly established federal right to the appointment of a non-psychiatric expert, the trial court's failure to appoint an expert on methamphetamine use does not entitle Petitioner to a writ of habeas corpus.

Moreover, assuming such a right exists, Petitioner is still not entitled to habeas relief.

Petitioner has failed to show how the denial of a methamphetamine expert witness substantially prejudiced him at trial, because each of the witnesses at issue admitted to having severe memory problems, and the lead investigating officer testified that methamphetamine addicts demonstrate poor memories and difficulty with the recall and temporal sequencing of events.   Testimony by an expert witness would be duplicative of the testimony given by the witnesses and the lead investigator on this issue.   The benefit of an expert witness would be entirely speculative.   See Moore v. Reynolds, 153 F.3d 1086, 1112 (10th Cir. 1998).   Because Petitioner has offered no more than an "undeveloped assertion" on how an expert on the use of methamphetamine would have been beneficial to his case, the trial court did not deprive Petitioner of due process by denying his request for such assistance.   Id. (citing Caldwell v. Mississippi, 472 U.S. at 323 n.1).   Therefore, Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim Three: The Evidentiary Claim

Petitioner alleges that it was error for the prosecution to present, and the court to allow, a police officer to testify as an expert witness on the psychology of the memory of drug addicts.

Detective Sally Wolter described to the jury how she interviewed methamphetamine users:

> One of the problems with meth addicts and Oxycontin addicts who are up for days and weeks at a time, is that they have the inability to recall, such that you and I would have.   It's not that they would never remember, but they have to have a trigger in order to bring out that particular event.   They will remember certain events in their life that is important.   Other events that are not, are lost and unless you explain to them, certain events and trigger something that's going to remind them of that event, they will deny until the day's end, that they were a participant or even a witness to what happened.   That's what occurred with all these witnesses that I encountered in this case.

9/29/2006 Trial Tr. at 126 (Dkt. 17-16).

Wolter testified that she has interviewed "hundreds" of methamphetamine users during her career.   Id. at 124-125.   Wolter's testimony was based on her perception of witnesses in connection with her experience as a police officer.   Furthermore, the trial court instructed the jury that it was to consider Wolter's testimony by the same standard it used to evaluate the testimony of any other witness.   10/25/2006 Trial Tr. at 218-219 (Dkt. 17-18).

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court.   Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).   In addition, federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005) (quoting Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988)).   The Michigan Court of Appeals concluded that Wolter's testimony was permissible lay opinion under state evidentiary law.   This Court, sitting on federal habeas review, may not conclude otherwise, and, thus, Petitioner is not entitled to habeas relief on his claim that Wolter's testimony was impermissible lay opinion testimony.   See Charles v. Thaler, 629 F.3d 494, 500 (5th Cir. 2011).   Therefore, Petitioner's third claim is without merit.

### D.  Claim Four: The Sufficiency-of-Evidence Claim.

Petitioner claims that there was insufficient evidence to prove beyond a reasonable doubt that he was present at the break in and murder of Henry Marrott on July 19, 2002.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   In Re Winship, 397 U.S. 358, 364 (1970).   But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."   Jackson v.

<u>Virginia</u>, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt." <u>Id.</u> at 334 (emphasis in original).  Instead, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> (emphasis in original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the <u>Jackson</u> standard.  <u>See</u> <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." <u>Id.</u>  For a federal habeas court reviewing a state court conviction, "the only question under <u>Jackson</u> is whether that finding was so insupportable as to fall below the threshold of bare rationality." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2065 (2012).

On habeas review, a federal court does not reweigh the evidence or re-determine the credibility of the witnesses whose demeanor was observed at trial.  <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983).  It is the province of the fact finder to weigh the probative value of the evidence and resolve any conflicts in testimony.  <u>Neal v. Morris</u>, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court, therefore, must defer to the fact finder for its assessment of the credibility of witnesses.  <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being; (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result, (3) while committing, attempting to commit, or

> assisting in the commission of any of a set of specifically
> enumerated felonies.

Id. at 789 (citing People v. Carines, 597 N.W. 2d 130, 136 (Mich. 1999)).

The Michigan Supreme Court has indicated that a "jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." People v. Aaron, 299 N.W.2d 304, 327 (Mich. 1980). "Malice may also be inferred from the use of a deadly weapon." Carines, 597 N.W. at 136.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some
> other person; (2) the defendant performed acts or gave
> encouragement that assisted the commission of the crime; and (3)
> the defendant intended the commission of the crime or had
> knowledge that the principal intended its commission at the time
> he gave aid and encouragement.

Riley v. Berghuis, 481 F.3d 315, 322 (6th Cir. 2007) (citing Carines, 597 N.W.2d at 135).

Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." Byrd v. Tessmer, 82 F. App'x 147, 150 (6th Cir. 2003) (citing People v. Turrell, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)).

The Michigan Court of Appeals found that the prosecution presented sufficient evidence that would permit a rational trier of fact to conclude beyond a reasonable doubt that Petitioner participated in the murder and larceny to sustain his conviction as follows:

> Based on the testimony of three accomplices, Griffes and his
> co-defendants went to the victim's home with the intent of stealing
> Oxycontin and money. Griffes was in the home of the victim when
> Heath McGowan repeatedly struck Henry Marrott about the head
> with an object, causing his death. During this assault, Griffes
> participated in the search of the victim's home for drugs and cash.

19

> Although Heath and Clint McGowan denied knowing Griffes at the time of the murder, Mike Hansen, Tara Waldorf and Melissa Mudgett all placed him at the crime scene and in the vehicle with them.   As such, sufficient evidence of Griffes' participation in the murder and surrounding larceny existed to sustain his conviction.

McGowan, 2009 WL 4827442, at *22.

This Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction."   Brown v. Davis, 752 F.2d 1142, 1144 (6th Cir. 1985).   In the present case, three accomplices testified that Petitioner was at the crime scene and in the car with them.   This evidence was sufficient to support Petitioner's convictions.   See Brown v. Burt, 65 F. App'x 939, 944 (6th Cir. 2003).

Petitioner claims that it was impossible for him to have participated in the robbery and murder due to serious injuries that he received following an automobile accident.   The Michigan Court of Appeals rejected this portion of Petitioner's claim as follows:

> Defendant asserts that his participation in the crime was physically impossible due to his injuries following the automobile accident. While all of the medical personnel cited by Griffes confirm the nature and extent of these injuries, they could not verify whether he ignored medical restrictions and ambulated.   While all opined ambulation might be painful, it was not deemed impossible.   In fact, Hendler, a home health service provider, observed defendant on July 23, 2002, ambulate approximately 80 feet.   Mike Hansen also indicated observing Griffes ambulate and his presence at the apartment of Jody Smith when a decision was made to rob Marrott's home, which was confirmed by Smith.   In addition, while acknowledging memory problems, Christy Lawler testified that she saw Griffes shortly after his motor vehicle accident riding a bicycle while carrying crutches.   While unsure of the specific date of this encounter, Lawler indicated that Griffes showed her his skin graft, which appeared raw and still required bandaging.   Griffes also claims that the witnesses who place him at the crime scene either lied or had poor memories due to their addictions, making any identification by these witnesses suspect.   However, Hansen, Waldorf and Mudgett all testified before the grand jury and at trial that they were with Griffes at the scene.   By claiming that the

20

> testimony of these witnesses should be disregarded because they either lied or had poor memories of the event, Griffes essentially requests that this Court make a credibility determination regarding these witnesses and their testimony. Questions pertaining to the credibility of witnesses are the province of the jury and we will not reconsider them. Because the testimony of these witnesses is sufficient to establish that Griffes was present and a participant at the murder scene, his claim of error lacks merit.

McGowan, 2009 WL 4827442, at *22.

Furthermore, Michael Hansen testified that he noticed that Griffes walked with a cane when they got out of the car and walked towards Marrott's home. 9/25/2006 Trial Tr. at 97 (Dkt. 17-12). Griffes' friends observed him being mobile in the days following his accident. Cristy Lawler testified that she saw Griffes "riding a bike with crutches and he showed [her] the skin graft on his leg." 9/28/2006 Trial Tr. at 198-200 (Dkt. 17-15). Jody Smith, who previously lived with Griffes, testified that he was able to walk up the stairs to her apartment. 9/26/2006 Trial Tr. at 120-121 (Dkt. 17-13). Heather Wisniewski, co-defendant Clint McGowan's girlfriend, testified that Griffes did not have any trouble moving around when he would visit McGowan in July 2002. 9/26/2006 Trial Tr. at 85.

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Cavazos, 132 S. Ct. at 6. Although there may have been some evidence to support Petitioner's claim that his injuries precluded his involvement in the crime, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," Petitioner is unable to show that the Michigan Court of Appeals' unreasonably determined that the prosecutor disproved Petitioner's impossibility to commit the crime claim.

See, e.g., Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).

Because there were multiple pieces of evidence, including eyewitness testimony, to establish Petitioner's identity as one of the perpetrators in this case, the Michigan Court of Appeals did not unreasonably apply Jackson in rejecting Petitioner's sufficiency of evidence claim.   See Moreland v. Bradshaw, 699 F.3d 908, 919-21 (6th Cir. 2012).   Therefore, Petitioner's sufficiency of the evidence claim is without merit.

### E.   Claim Five: The Peremptory-Challenge Claim

Petitioner next contends that the trial court committed reversible error during jury selection because the number of peremptory challenges afforded each defendant was insufficient, and because of inconsistencies in the method of permitting the parties to exercise their peremptory challenges.   The Michigan Court of Appeals considered and rejected these arguments.

While noting an apparent conflict that existed at the time of Petitioner's trial between a court rule, Mich. Ct. R. 6.412(E)(1), and a statute, Mich. Comp. Laws § 768.13, pertaining to number of peremptory challenges permitted to each side, the court of appeals held the court rule governed because peremptory challenges are a matter of practice and procedure for the administration of the state court.   McGowan, 2009 WL 4827442, at *6; accord Lakin v. Stine, 358 F. Supp. 2d 605, 617-618 (E.D. Mich. 2005) (holding that court rule regarding the number of peremptory challenges takes precedence over statute because such challenges are "matters pertaining to practice and procedure").   As each side was afforded the proper number of challenges under the court rule, the court concluded that the defendants had failed to demonstrate any error.   McGowan, 2009 WL 4827442, at *6.[2]   Ultimately, this decision was a state-court

_____

2 Mich. Ct. R. 6.412(E)(1) provides that, when three defendants are tried jointly, as occurred in Petitioner's case, each defendant is entitled to nine peremptory challenges.   Under these circumstances, the prosecutor is entitled to the total number of peremptory challenges to which all

determination of a state-law question, the reexamination of which is not within the province of this Court.   Drain v. Woods, 902 F. Supp. 2d 1006, 1033 (E.D. Mich. 2012); see also Greer v. Mitchell, 264 F.3d 663, 675 (6th Cir. 2001) ("Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law."); Czuj v. Berhuis, No. 2:10-CV-10392, 2013 WL 757624, at *8 (E.D. Mich. Feb. 28, 2013) ("[E]ven if the trial judge in this case somehow erred by failing to award Petitioner additional peremptory challenges, it was an error of state law that is not cognizable on federal habeas review.").[3]

Similarly, regarding the argument that the trial court failed to follow the proper rotational method for exercising peremptory challenges, the court of appeals first acknowledged that there is no right to peremptory challenges under the U.S. Constitution; rather, the existence and manner of exercising peremptory challenges arise under state law.   McGowan, 2009 WL 4827442, at *6; Mich. Comp. Laws § 768.12; Mich. Ct. R. 6.412(E); Mich. Ct. R. 2.511(E)(3); see also Lakin, 358 F. Supp. 2d at 617 ("Because peremptory challenges are creatures of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise."). The court concluded that the process used in Petitioner's trial, while flawed, was neither unfair nor deprived Petitioner of having an impartial jury under state law.   McGowan, 2009 WL 4827442, at *7. Again, this Court does not second guess a state-court determination of a state-law question.   Greer, 264 F.3d at 675; Drain, 902 F. Supp. 2d at 1033;

---

the defendants are entitled — meaning, for three defendants, the prosecutor was entitled to 27 peremptory challenges.   This allocation of challenges was properly followed in Petitioner's case.

3 Notably, Petitioner's counsel exercised ten peremptory challenges during jury selection — one more than Petitioner was entitled to under the court rule.

Further, it can hardly be said that the state-court decision was either contrary to, or an unreasonable application of, clearly established federal law.   The Supreme Court has repeatedly held that peremptory challenges are not of a federal constitutional dimension.   See Rivera v. Illinois, 129 S. Ct. 1446, 1454 (2009) ("[B]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution."); see also Georgia v. McCollum, 505 U.S. 42, 57 (1992) ("This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial"); Stilson v. United States, 250 U.S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.").   Petitioner has failed to put forth any Supreme Court precedent to suggest that there is a federal constitutional right concerning the manner in which peremptory challenges are exercised.

Therefore, Petitioner's fifth claim is without merit.

**F.   Claims Six Through Ten: The Procedurally Defaulted Claims**

Respondent contends that Petitioner's remaining claims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Mich. Ct. R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice."   Coleman v. Thompson, 501 U.S. 722, 750-751 (1991).   If a petitioner fails to show cause for his procedural default, it is

unnecessary for the court to reach the prejudice issue.   Smith v. Murray, 477 U.S. 527, 533 (1986).   In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default.   Murray v. Carrier, 477 U.S. 478, 479-480 (1986).   However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial.   Schlup v. Delo, 513 U.S. 298, 324 (1995).   "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."   Bousley v. United States, 523 U.S. 614, 624 (1998).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.   For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."   Mich. Ct. R. 6.508(D)(3)(b)(I).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar."   Harris v. Reed, 489 U.S. 255, 263 (1989).   If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground.   Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal "because the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."   These orders, however, did not refer to subsection (D)(3).   Nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.   Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained.   See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010).   This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims.   Id.

In the present case, the Montcalm County Circuit Court judge, in rejecting Petitioner's motion for relief from judgment, initially recited the provisions of Mich. Ct. R. 6.508(D)(3) and its requirement that, to obtain post-conviction relief on a ground that could have been raised on direct appeal, a defendant was required to show good cause for failing to raise such a claim on appeal, as well as actual prejudice from the alleged irregularity.   People v. Griffes, No. 06-M-7355-FH, Order at *3 (Montcalm County Circuit Court Nov. 2, 2012).   In denying the motion, the judge stated:

> The Defendant has not met his burden of showing both good cause and actual prejudice required by Michigan law.   Further, this Court is unable to find that but for the claimed errors, the Defendant would have otherwise had a reasonable likelihood of acquittal.

Id. at *3.

The trial court judge clearly denied Petitioner post-conviction relief based on the procedural grounds stated in Mich. Ct. R. 6.508(D)(3).   Therefore, Petitioner's post-conviction claims are procedurally defaulted pursuant to Mich. Ct. R. 6.508(D)(3).   See Ivory v. Jackson,

26

509 F.3d 284, 292-293 (6th Cir. 2007); see also Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005).[4]

      With respect to his post-conviction claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.   Petitioner, however, has not shown that appellate counsel was ineffective.

      It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.   See Jones v. Barnes, 463 U.S. 745, 751 (1983).   The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . .   Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.

      Moreover, "a brief that raises every colorable issue runs the risk of burying good arguments — those that, in the words of the great advocate John W. Davis, 'go for the jugular,' — in a verbal mound made up of strong and weak contentions."   Id. at 753.

      The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring a Strickland [v. Washington, 466 U.S. 668 (1984] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

Smith v. Robbins, 528 U.S. 259, 288 (2000).

      Strategic and tactical choices regarding which issues to pursue on appeal are "properly

---

[4] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim.   See Guilmette, 624 F.3d at 291.   However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

left to the sound professional judgment of counsel." <u>United States v. Perry</u>, 908 F.2d 56, 59 (6th Cir. 1990). "The hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." <u>Smith v. Murray</u>, 477 U.S. at 536 (quoting <u>Barnes</u>, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." <u>Monzo v. Edwards</u>, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. <u>Meade v. Lavigne</u>, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a 50-page appellate brief, which raised the first five claims that Petitioner presented in his petition. <u>See</u> Def. Br. at 39-88 (cm/ecf pages) (Dkt. 17-30). Petitioner has not shown that appellate counsel's strategy in presenting these five claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated in Respondent's answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner in his post-conviction motion were "dead-bang winners." Because the defaulted claims are not "dead-bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. <u>See</u> <u>McMeans v. Brigano</u>, 228 F.3d 674, 682-683 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner: "[A]ppellate counsel

cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"   Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, Petitioner has failed to show cause to excuse his default.   Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.   Smith, 477 U.S. at 533.   Furthermore, Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow this Court to consider these claims as a ground for a writ of habeas corpus, in spite of the procedural default.   Petitioner's sufficiency of evidence claim (Claim Four, discussed supra) is insufficient to invoke the actual innocence doctrine to the procedural-default rule.   See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).   Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the court declined to review the procedurally defaulted claims on the merits.   See Welch v. Burke, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999).

Assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural-default rule, because his claims would not entitle him to relief.   The cause-and-prejudice exception is conjunctive, requiring proof of both cause and prejudice.   See Matthews v. Ishee, 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by Respondent in the answer to the petition for a writ of habeas corpus, Petitioner has failed to show that his post-conviction claims have any merit.   Therefore, Petitioner is not entitled to habeas relief on his remaining claims.

### E.  Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.   See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).   "A petitioner satisfies this standard by demonstrating that . . .   jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   Miller-El, 537 U.S. at 327.   In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.   Id. at 336-337.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   Slack, 529 U.S. at 484.   When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.   In such a circumstance, no appeal would be warranted.   Id.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to the foregoing habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling.   Accordingly, a certificate of appealability is not warranted in this case.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)).   Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith.   Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a).   "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.   Foster, 208 F. Supp. 2d at 765.   Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.   Id. at 764-765.

## IV.   CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

Dated:   December 12, 2016                                     s/Mark A. Goldsmith
         Detroit, Michigan                                    MARK A. GOLDSMITH
                                                              United States District Judge

31

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 12, 2016.

s/Shawna C. Burns
Case Manager Generalist